# SUPREME COURT.

IN THE MATTER OF THE APPLICATION OF THE COMMISSIONERS OF THE CENTRAL PARK, &C., TO ACQUIRE LANDS FOR THE OPENING AND WIDENING OF ONE HUNDRED AND TENTH STREET, BETWEEN EIGHTH AND RIVERSIDE AVENUES, IN THE CITY OF NEW YORK.

*Closing old roads — measure of damages — Powers of commissioners of estimate — Leasehold interest.*

Such portions of old roads and streets dedicated to public use as are retained for new parks, streets or avenues by the commissioners of the Central park in the city of New York, in that part of said city relaid out by them, still remain open, and the owner of the fee thereof is entitled only to nominal compensation upon the assessment of damages in acquiring the same for the opening of such new parks, streets or avenues.

Commissioners of estimate and assessment in the city of New York are authorized to estimate the value of the leasehold of a tenant of premises required for a new street. Such value must be over and above the rent reserved in the lease, but is subject to no arbitrary rule, and must depend very much upon location, business facilities and state of trade, all of which elements of value must be considered by the commissioners, whose determination will not be disturbed unless made against a decided preponderance of evidence.

The commissioners are not limited to the evidence presented by the claimants and the public authorities, but they are entitled to inspect and examine the subject-matter of the various claims made for themselves, and to obtain opinions and judgments of others, and then to base their determination upon what they deem to be the result of all these sources of information, and such determination will not be reversed unless important misapprehensions are exhibited or some erroneous principle be adopted, or compensation be allowed for some improper subject or denied where it should have been made.

*Special Term, August,* 1873

MOTION to confirm report of commissioners of estimate and assessment.

*E. Delafield Smith*, counsel to the corporation, and *David J. Dean*, for motion.

*James A. Deering* and *Oliver W. West*, for E. Conkling, opposed.

*John C. Shaw*, for Thomas W. Conkling, opposed.

*A. Sullivan*, for William H. Weaber, opposed.

DANIELS, *J.*— The papers required to be consulted and considered in the determination of this application were recently handed in, and for that reason no earlier decision of it could be practically made.

It does not present either the propriety or the legality of the assessment made by the commissioners for the purpose of paying the expenses of the improvement, nor the question what property may be lawfully liable to such assessment, but simply whether the commissioners have made proper awards of compensation, so far as such awards affect the parties complaining of them.

The street, as laid out and widened by the commissioners, includes within its boundaries a section of what was known as the Bloomingdale road. This road had been used as a public highway by the public for many years previous to the time when the action of the commissioners was taken; for a much greater number than the law requires to create a lawful public way over the soil occupied and appropriated by it.

In that way, if by no other means, the public had acquired the right to the perpetual use of the soil included within the bounds of the road, for the purposes of public travel; subject to such use, the adjacent owners of the soil held their title.

But on that account the title was necessarily of no more

use than a nominal value as long as the right so to use the land continued. For that reason any proceedings lawfully taken to divest that title while it continued subject to this public use, would be valid on making the owner a merely nominal compensation. Such a compensation would be commensurate with value of the owner's interest in a piece of land subject to a perpetual use as a highway.

This was held to be the rule applicable to streets surveyed through lots of land sold in such a manner as to constitute a dedication of the land over which the streets were laid to public use (*In the Matter of Truman street*, 17 *Wend.*, 650). And no extension of that rule is required for the purpose of including a case like the present one within it.

By chapter 697 of the Laws of 1867 (*vol.* 1, 1748), the power was conferred upon the board of commissioners of Central park, to direct what part or parts of this as well as of certain other streets and roads of the city, should be abandoned and closed, and to widen any streets or avenue, then laid out.

And their action in this respect was required to be delineated and shown by the maps and plans they were to make and to certify in the exercise of that authority. And all streets and roads, etc., previously laid out, established within the designated district, not shown or retained upon the map, were from the time of filing the map to cease to be public streets or roads.

And the lands included in such streets and roads, so far as they were abandoned and closed by the commissioners, were to rest in the abutting owners, upon such streets and roads, "except where such streets, avenues or roads shall, on said maps, have been retained or taken for other public use" (*Vol.* 1, *Laws of* 1867, 1750, *sec.* 3).

The plain effect of this exception was to retain and reserve all the rights of the public in and to the parts of the road referred to which had been previously acquired, that the commissioners did not omit as abandoned.

And under its authority the commissioners retained upon

their map so much of this road as was required to be occupied and included in the laying out and widening of One Hundred and Tenth street. To that extent the Bloomingdale road was not closed or abandoned by them, but on the contrary continued and preserved.

As to that portion the public right of use was unimpaired, and the abutting land owners had no greater interest in it than they did while the entire road was maintained and used by the public.

And as the fee subject to that use was of no more than a nominal value, the amount of a corresponding compensation was sufficient to satisfy the provision in the Constitution adopted for the preservation and security of the rights of private property, as to these owners the awards made were legal and proper.

The remaining award objected to upon the present application, relates to property situated on the corner of the Bloomingdale road and One Hundred and Tenth street.

This was owned by Thomas W. Conkling and others, but it was in the possession of W. H. Weaber, a tenant, under a lease extending to the 1st day of May, 1875.

From the affidavits used before the commissioners the lot appeared to be eighteen feet in width, having buildings upon it used as a drug store, residence and stable by the tenant; ten feet of the lot was appropriated to the construction of One Hundred and Tenth street as widened by the commissioners. And by this reduction of its dimensions, it could be fairly assumed from the affidavits, that the tenant could have no further substantial benefit from the premises after it should be made.

The case was, therefore, not one where any assessment for benefits arising out of the improvement, could either properly or lawfully be made upon him.

By the improvement made, the affidavits produced before the commissioners warranted them in conceding, that all beneficial enjoyment of the property affected by the tenant

would be at an end. So that the facts presented the question for their determination as to what was the value of his lease over and above the rent reserved in it. And that, they concluded to be the sum of $1,000.

The affidavits presented by the owner stated the value at a sum not exceeding $100, while that of the tenant, in substance, alleged it to be much larger than the award made on account of the destruction the improvement would result in to the buildings on the lot, and in part placed there by himself or his predecessor whose rights he had acquired by assignment.

The tenant was entitled to an award equal to the fair market value of his term, and evidence was given tending to show it to have been a valuable one to him. One award made by the commissioners in terms was for "estimated damage to his leasehold interest."

This was a lawful subject of compensation. It did not include any thing, as it properly could not, for the injury sustained by loss or damagement of his business. And there is nothing in the award, nor in the evidence produced, showing that the commissioners intended to compensate the tenant for any loss not constituting a proper and lawful subject of remuneration.

In these proceedings the commissioners are designed to be selected for their integrity, general intelligence and peculiar qualifications and capacity for the discharge of the duties required to be performed, in hearing, examining and determining the claims created by the appropriation of property for public improvements.

And in the investigations they are not limited to the evidence presented by the claimants and the public authorities, but they are entitled to inspect and examine the subject-matter of the various claims made, for themselves; and to obtain the opinions and judgments of others, and then to base their determination upon what they deem to be the result of all these sources of information. And after they have done that

their conclusions are not set aside or annulled, because the compensation made may appear to be above or below the estimate placed upon their rights, by the parties in interest or their witnesses, unless important misapprehensions are exhibited or some erroneous principle be adopted, or compensation be allowed for some improper subject, or denied where it should have been made.

As to the principles on which the award may be made, the determination of the commissioners may be reviewed. But as to the amount to be allowed, the award is treated as final, unless made against a decided preponderance of the evidence given in the case (*Matter of Furman Street*, 17 *Wend.*, 650; *Matter of John and Cherry Streets*, 19 *id.*, 659; *and of William and Anthony Streets, id.*, 678; *Matter of Comm'rs of Central Park*, 51 *Barb.*, 277).

No arbitrary rule can be prescribed for the determination of the value of a legal estate in the property of others. Its value, like that of all other species and interests of a proprietary nature, must depend very much upon location, business facilities and the state of trade in the locality where it may be situated.

In some instances it will be found to fall far below the rent reserved, and where such an estate may be taken the tenant would obviously be entitled to receive only a nominal compensation, while in others the value might be so great as to exceed that of the reversionary interest left in the owner.

The emergencies of these cases must always be considered by the commissioners, whose duty it is to compensate every party for the fair value of what may be taken from him and appropriated to the purposes of a public improvement.

There is nothing showing the commissioners to have proceeded differently in the present instance, and the presumption, therefore, is that their awards were just and lawful.

The motion for confirmation must, for that as well as other reasons mentioned, be allowed to prevail.